Good morning, December 2012, 1474, eBay, Inc. v. Kelora Systems. Mr. Baker. Good morning, Your Honors. My name is Robert Baker, and I represent Kelora. This appeal is about the improper application of the on-sale bar. In the case, the court used a prior court order that was directed to original claims that no longer exist. In the prior case, the court found that those claims were the subject of an on-sale bar and invalidated those claims. Kelora appealed that order, arguing that the on-sale bar was inappropriate, that the claims had not been placed on sale. But at the same time, there was a reexamination pending. During the reexamination, the examiner rejected the claims, and Kelora was ultimately forced to amend the claims to direct them to a different invention. Why isn't this case on all fours as it's faxed? Why isn't faxed to take the results here? In other words, the on-sale meant that the claims in the elements of the 821 were prior art. Therefore, why is the judge's analysis not consistent with the analysis required under fax? First of all, she compared the claims, for the most part, to the old claims. She didn't compare them to the prior art. The old claims mean the 821 claims that were invalidated? Yes. Okay. Well, if by definition, those claims that are invalidated are in the prior art, what's wrong with what she said? Are you disputing that they're not prior art? Yes, we're disputing it. We had disputed it in the prior appeal. The prior appeal was mooted by the reexamination, and so we didn't get a full and fair opportunity. When you say mooted, you basically aborted prior appeals, right? Well, I think we were obligated to do so. There was no longer a case or controversy regarding those claims. They no longer existed, so we filed them. So that original decision, then, was law? Yes, and we don't dispute—we're not trying to take— But not mooted. The opinion is not mooted. What down and what resulted from the initial case is not mooted in any way, shape, or form. The controversy was mooted, and that was the order of this court? No, the appeal was mooted, but the original trial judge's invalidation was not mooted. That's law of the case, right? Yes. Okay. Let's be clear. So we feel that we couldn't, in good faith, continue without appeal because the controversy between the parties no longer existed as to those claims. And there's a case that describes a very similar situation, interconnect B field, where the facts were the same except for the case was in reissue. And then in a subsequent decision, the court said that the new claims were invalid in view of the old claims plus additional art. The parties made similar arguments to the arguments I'm making now that there was no full and fair opportunity. I think the problem for you, so you can respond to it, is there's another distinction between this case and interconnect, which was that interconnect, the invalidation was under 103, and these are on the on-sale bar. And it seems to me there's a reasoned principle distinction between the results in interconnect because it was an obviousness invalidity case and this case, which went on the on-sale bar. So can you address that? Yes. This case, the case that we're dealing with here today, was an obviousness type on-sale bar. The court combined the prior decision of on-sale bar together with additional art. And when it did that, it didn't... Wait, are you talking about the 821, the initial appeal, or are you talking about this case now? This case now. Right, right. But the initial appeal was an on-sale bar, in contrast to interconnect where the initial appeal was an obviousness determination, right? Yes. Okay. Well, the court made clear that the holding that we rely on is that the original claims are not prior art against the reissued claims, in this case, reexamined claims. The court said it is not correct to weigh the reissued claims against the original claims. It's not correct to weigh the changes in the reissued claims against the original claims. It is the reissued claim alone that is to be analyzed in accordance with the Graham Guidelines. And the differences to be considered are the differences between the reissued claim as a whole and the prior art. And my question to you is, don't you think there's a principal distinction between this case and the facts of this case, and the fact that the 821 went down on the on-sale bar, and the interconnect question which indicated an obviousness determination? In other words, there's a rational kind of thing. It makes some sense to think prior obviousness determination would not necessarily mean that all of those claims are prior art for purposes of a reissue and a reexam, because you're involving combinations and so forth. But it seems to me a different analysis might apply to this case. Well, I respectfully disagree and think that it does not. Claims are not prior art. Prior art is defined by 35 U.S. Code Section 102, and claims are not set forth in that section. And I think this court did hold and feel that claims are not prior art. In this case, what you need to do, and I agree with your original statement, is that you have to look at the FAF case, and the FAF case has two requirements. The first requirement is that there was an offer to sell, and in this case there was no offer to sell the claimed invention. The claimed invention is a method claim. This is something that was not discussed at all in the prior case. There are a number of steps for the method. It's not a device, so it's not on par with all the device on-sale bar cases. It's directly on point with the Plumtree case, and the Plumtree case said that you either have to have performed the steps for money before the critical date or have offered to perform them for money. Well, I don't understand your reference to the Plumtree case because that seems like you're attacking the question of whether or not there should be collateral estoppel with respect to the earlier case. And I thought, you know, we were conceding there is some collateral estoppel with respect to the earlier case. Oh, no, I'm not conceding that there's collateral estoppel. But if we conclude that there is collateral estoppel with respect to the first case, then Plumtree has no applicability, does it? No, I disagree. You still have to, well, there's a number of issues with that. Number one is if there is collateral estoppel, you have to look at what issue in this case was actually decided in the prior case. The issue in this case is whether those claim elements were actually performed for money before the critical date or whether there was a promise to perform them for money before the critical date. None of those issues were decided in the prior case. In the prior case, the only thing that was discussed was whether a demo program, which the other side now admits was not the subject of an offer for sale, whether the demo program was reduced to practice, and it was found that the inventors had filed declarations in the PTO for earlier, much broader claims, saying that those claims were fully reduced to practice in that demo. And so the court found, number one, there was a reduction in practice, and number two, the defense that was raised, which was an experimental use defense, was inapplicable because there was a reduction in practice. So in the prior case, there was never any discussion as to whether these method steps were performed. So let me understand, because you did call out in gray repeatedly the statement that they concede that the AMP is not prior art. So that's your view, that they've made a concession with regard to that? Yes. Well, there was some discussion, however, in red with regard to the AMP demo versus the entire project. Do you think that has any relevance to your claim that they've abandoned the argument that the AMP is prior art? It does have relevance. They're trying to make a distinction. They're trying to say, on the one hand, the demo is not the subject of the offer for sale because we have submitted declarations that show that the demo teaches away from the reexamined claims. The reexamined claims are directed to a different invention than was what was at issue in the first case. In the reexamined claims, there's a requirement that you take two data elements together and have them resubmitted to a server. That was actually prevented by the AMP navigator. The declarations of Mr. Gafford and Mr. Kimbrough established in this case, and it was never an issue in the prior case, that that is prevented. Excuse me just a moment. You say it was prevented by the AMP navigator. The demo software. Because there's a distinction between the AMP navigator and the AMP navigator demo, is there not? I understand that they make that distinction. I think they make the project name is the navigator and the navigator demo is a piece of software. But just to be clear, from what you were saying, you're not saying that the claims were broadened on reexamination. No, they were narrowed. The original claims would have covered multiple embodiments, but they were narrowed to a specific invention that called for resubmission of search terms. And the demo that was relied on, to whatever degree, teaches away from that. And there's extensive expert testimony and lay testimony on this issue, and it's not disputed. It definitely teaches away, and therefore we think that the court erred by resolving that issue. It's not disputed that it teaches away? No, it's not disputed that it teaches away. The way that they try to get around that here... That's not the Arnett reference, right? No, it is not. We also argue that... There may be an argument in the brief that Arnett teaches away. We argue that Arnett teaches away as well. The demo does teach away, and so in this case they tried to say that, well, we want to hold on to the prior order, but we don't want to hold on to the demo software. The reason for that is the software teaches away. So either we have the case where there is an offer to sell that includes the demo, and if that is the case, the demo teaches away, or there's an offer for sale that does not include the demo, and if it does not include the demo, the navigator proposal doesn't include the steps of the method. The court is assuming that that includes steps 1 through 10 of the method or A through G of the method, but it does not. Did the demo include the steps of the method? The demo did include most of the steps, and it was found that it included all the steps of the original claims that were in the application originally, because the inventors filed a declaration that swore behind a reference. They actually then amended the claims after that, so there is a slight difference, but the contention here is that that AMP navigator demo software is not part of the sale, and if it's not part of the sale, then everybody admits in the court found that conception took place upon filing of the application, that reduction of practice took place upon the filing of the application. There's nothing to meet those 10 or so elements that came from the original claims, and it was improper to grant summary judgment in this case. The conception took place at filing, number one, so PASS says that you cannot have an on-sale bar, and subsequent Federal Circuit cases have said you can't have an on-sale bar before conception. Well, it was determined here that conception was on the date of filing, so that conception date is far in advance. That's a little confusing here, particularly if we disagree with you that there's some collateral estoppel that applies with respect to the 821 PASS, right? Well, it is a little confusing. I'd like to just wrap up and save a minute of time and answer that. If we're to apply collateral estoppel, it's not that we import everything from the prior case and try to build on it. That was said to be improper in field. What you need to do is look in this case and see if there were any issues in this case that were previously litigated. My contention is that the FAF factors, which are to be examined according to plum tree because this is a method case, that none of those factors were actually adjudicated in the prior case. Experimental use was adjudicated, and reduction to practice of the original claims was adjudicated, and those issues are not at issue here today. All right, let's hear from the other side, and we'll save you a minute. Thank you. Thank you, Your Honor. May it please the Court. The argument Kalora has presented today, and it's the same argument they present in their briefs, it rests on two fundamental mistakes. One is a legal mistake, and the other is a factual mistake. The legal mistake really has to do with the application of Section 102B in the context of Section 103. This Court has repeatedly held, in Dipp and Dotz and other cases, that prior art under Section 102B is also prior art for purposes of obviousness under Section 103. So Section 102B offer for sale not only anticipates claims that claim the precise subject matter that was offered, but it's also prior art for purposes of determining obviousness of other claims. That was fact. Yes, but your friend says, one, interconnect says otherwise, and two, fact is distinguishable because it wasn't a method claim. I think both of those distinctions are wrong. In the interconnect versus field case, as Your Honor pointed out, that was an obviousness case. And in fact, the Court, in its opinion in that case, made a point of saying that the fact that something is obvious means that it can still describe a combination not found in the prior art. And that's at 1137 of that opinion. Now what that means is that the fact that the original claims in that case had been held invalid for obviousness did not put their subject matter in the prior art. And so the District Court in that case was wrong to simply hold, well, the prior ruling resolves the fate of the reissued claims. Here we have an anticipation finding, and that means by definition that all of the elements of original claims 1 and 2 of the 821 patent arranged exactly as in those claims are in the prior art. So field had nothing to do with 102B either, so field is completely different. So assuming we agree with you there, what is the analytical framework going forward? Do you then just say, okay, we start here, so what was different, and we simply examine the new elements that were added in the re-exam, or do we indeed have to still continue to look at the claim as a whole? Well, I think you still continue to look at the claim as a whole, and that's what the District Court did here. The District Court properly went through all of the grand factors. The Court started, you know, first of all, level of ordinary skill was undisputed. In fact, the Court adopted Kalora's definition of that. The scope and content of the prior art, when you put aside the misunderstanding of what the prior 102B finding means, that was essentially undisputed because it meant all of the elements of original claims 1 and 2 were in the prior art along with other prior arts such as the Suzuki reference and the Arnett reference. Do I hear you saying as well that the claims were themselves prior art? I'm sorry, could you repeat that, Your Honor? You're saying all of the elements that were, for whatever reason, inherent or implicit or whatever in the claims there that no longer exist, that those claims are prior art? The subject matter of those claims are prior art. If they're in the prior art, but you're saying we have to look at the claims in order to find the prior art? No, you don't have to look at the claims to find the prior art, but in an anticipation case, which is what the original case here was, the anticipation finding means that all of those elements were in the prior art. They were in the prior art not because of the claims. They were in the prior art because of the prior 102B offer for sale. All right. I just wanted to be sure that you weren't making the same mistake in saying that the claims themselves are prior art. No, the claims themselves are not prior art, and that incidentally was one of the problems in the field. The district court there just treated those claims as in the prior art, but here where you had an anticipation finding, it means that all of the elements of those claims were in the prior art because they were found to be the subject of the prior offer for sale. So the prior art is actually the prior offer for sale. Now, when the district court referred to the prior claims, she wasn't saying the claims themselves are prior art, but what she was saying was really shorthand for saying that all of the elements of these claims are part of the prior art because they were offered for sale. Her shorthand was a bit confusing, but now I understand it better, I'm sure. Speak to the question of what was that original prior art sale. Was it the AMP generic navigator, or was it the AMP navigator demo, or was it something else? It was the former, and that's the second big mistake that Kalora makes here. The district court was very clear on this. One thing that's interesting here is that Kalora's argument, especially in its reply briefing you heard it here today, is that this was a surprise. All of a sudden the defendants were saying that the demo was not the subject of the prior offer for sale, that it was this broader navigator concept. Interestingly, more than a year ago, they went to the district court with this same we're surprised argument. They filed a motion to strike our summary judgment papers, saying that, hey, wait a minute, they're arguing that the AMP navigator concept is what was offered for sale rather than the demo, and that's a big change, and that's not what the court originally held. The court expressly rejected that, and that's at appendix pages 71, 22 to 25, and I commend that to your honors because the district court said, no, that's not what the defendants were arguing. The defendants have quite properly been arguing all along that what was offered for sale originally and what was the subject of the original decision was this more conceptual offer for sale, as your honor put it, the more generic navigator, not the specific demo source code. That's a critical distinction, isn't it? Well, it's a critical distinction because of their argument, because their argument in their briefing that you heard it here today is that, well, the demo didn't allow for resubmission and, therefore, it taught away, and, therefore, you can't find obviousness, which isn't right, but even if it were, I mean, putting that aside, that's not right, but that wasn't the subject of the offer for sale, and beyond the court's order on the motion to strike, which, as I said, is at 71, 22, in the original case, and this is at 1004 of the appendix, the court expressly distinguished between the offer and the demo. The court said the AMP proposal was a formal written proposal that described the navigator project in five phases, identifying the work to be performed in each phase. The proposal referred to a demo, a phase three, and Daner sent a memorandum to AMP providing instructions for installing and running it. The demo was a reduction to practice, which showed that the claims were ready for patenting, but it was not the subject of the offer. The court drew the same distinction in its order in this case. At appendix page 7, it said the offer for sale was of the subject matter of original claims 1 and 2. They had been the subject of a commercial offer for sale in March and April 1992, and they were reduced to practice in a demonstration program referred to as AMP Navigator. Again, two distinct things. Finally, in the same order at appendix pages 31 and 32, the court says, and this may be the clearest statement other than that motion to strike ruling, the prior invalidity finding placed the claim features that were the subject of the offer for sale, claims 1 and 2 of the original 821 patent, into the prior art for the obviousness inquiry, along with the specific reduction to practice and unclaimed limitations that were contained in the AMP Navigator demonstration program. So again, the court, from the outset, drew a clear distinction between what was offered for sale, which was the broader generic concept embodied in claims 1 and 2 of the original patent, and the demo, which was this specific reduction to practice. I'd also note, and the court, in the original order at appendix page 1,000, quoted the Danish, the inventor's testimony as saying the demo was not a usable product. So to suggest that that's what they were offering to sell, it doesn't make any sense. It's completely inconsistent with the inventor's own testimony. Before you conclude, I just wanted you to respond, and this might cause you to be a little bit redundant, but the lead in gray is that you've effectively conceded something by not responding to the citation of the Plumtree case. So could you, and you didn't respond to it in red, so can you tell us why, or at least distinguish it, or tell us why you don't think it's relevant, if that's your view? I will try to do all of that, Your Honor. The first reason that Plumtree doesn't apply is because Plumtree is an attack on the original judgment. Plumtree has nothing to do with this judgment. If there was a Plumtree problem, that was a problem in the original judgment which held that claims one and two, which were method claims, were anticipated by this offer for sale. So that's reason one. You think Plumtree was not properly planted. Is that your problem? Correct, Your Honor. It was not properly planted. The second problem with the Plumtree argument is that the inventor, Danish, admitted that the demo software, we've had the other argument about that, but he admitted that the demo software was a reduction to practice of these method claims. So this notion that somehow you couldn't find anticipation of method claims because there was an offer to sell a product, well, that's inconsistent with their own position. His testimony, and I think you heard it here again today, that the demo was a reduction to practice of the method claims. So again, that's another reason that I think Plumtree doesn't apply. The final reason, Your Honors, is that Plumtree involved a method for making a product and the offer there was an offer to sell the product. The court made a point in Plumtree, there were a number of particular facts in Plumtree. One of which was that it wasn't even clear there that the contract required that the product that they supply be produced using that method. And there were all sorts of timing questions also. Now here, the offer is to a method for using an apparatus or a system. It's not a method for making something. It's a method for using something. And it's long been settled in this court's precedent, and I refer the court to N. Ray King, a 1986 opinion, where the court said that a method for using an apparatus or system is anticipated by a prior ARC product. That quote, in its normal and usual operation, will perform the function claimed in the method patent. And that's exactly what we have here. There's no dispute, and the site for that, by the way, is 801 F 2nd 1324 at 1326. There's no dispute here that the product that they were offering, the AMP Navigator concept, the generic AMP Navigator, was specifically designed to and would perform the methods of original claims 1 and 2. So under N. Ray King, and there are other subsequent cases after King that polled the same thing, that offer for sale of that product anticipated those method claims. So they're properly prior ARC. So this case is very different because in this case, in Plumtree, the product that was offered for sale, as I said, it was not a product that would perform the method. It was a product that could be produced using the method. This case is very different because it's a method of using a system or an apparatus or a product, and here that is the very product that was offered. So, Your Honor, I hope that responds to your question about Plumtree. Now just in a final minute or two, the obviousness argument on the merits that Calora makes is entirely contingent on their argument that you have to look at the demo source code and that this broader generic AMP Navigator concept is not what was offered for sale. They argue that the source code teaches away from resubmission. Well, it doesn't teach away from resubmission. It doesn't use resubmission, but that's not the same as teaching away from it. And even putting the demo's source code to one side, the Arnett reference expressly teaches resubmission. The district court found that. They don't dispute that. The district court also found at appendix page 39 that there was no dispute that a person of ordinary skill could implement resubmission in a server-client environment, which is what the re-exam claims concern. So there really is no material disputed issue of fact here on obviousness. The district court properly applied all of the Graham factors. She marched through them, each one considered the re-exam claims as a whole, and came to the conclusion that they were obvious as a matter of law. I thought your friend also made the argument on Arnett that Arnett did teach away, because even though it had resubmission, it had negative comments and alternatives and so forth. Correct. He did say that. Their argument on Arnett is two things. They say that Arnett, first of all, says that there are other ways of doing iterative searches. Well, that clearly doesn't teach away. The court has many, many cases that say that references to other ways of doing it are not a teaching away. And the other thing is that Arnett notes a potential disadvantage of resubmission, namely that I think the gist of what he says is I can imagine that at some level it may use up too much bandwidth to send all the parameters back or something like that. But that's not the kind of clear discouragement that this court's cases require as a legal matter for teaching away. The cases are clear that the fact that something may not be touted as the best way of doing it, that there might be better ways of doing it, none of that is a teaching away as a legal matter. And that's all they've got. In fact, their expert, I think it's A7006 at paragraph 33 of his declaration, the most he was willing to say is that Arnett would not teach one of ordinary skill that resubmission is required or even preferred. Well, that may well be true, but that's not teaching away. Thank you, Your Honor. If there are no further questions. Thank you, Mr. Strunk. Mr. Becker? Yes, a few points to make. First of all, with respect to feel, the court, and this also goes back to some earlier questions about whether it matters that it was an obviousness case. The court says when a patent has been reissued with claims that are not substantially identical to the original claims, the invention as a whole, as now claimed, must be evaluated in terms of 35 U.S.C. section 103. The original claims, whether valid or not, are not prior art against the reissued claims. So this court said that even if the prior claims were valid, so that the 103 issue would no longer be there, that they cannot be compared and that the claim as a whole must be evaluated anew. I think the main issue in this case is that the court followed some of the reasoning in the Lockwood case. The Lockwood case, however, was not an on-sale bar case where you have secret prior art, if you will, that is being sold or offered for sale. It is about what has been exposed to the public. And so in that case, there was a ruling that the Sabre reservation system that was used by American Airlines, enough of it was publicly available such that it triggered the public use prohibition and that public part of it became prior art. So in this case, the argument essentially is the AMP Navigator demo, well the details of it that we rely on to say that it teaches away, that wasn't public. That wasn't part of the offer. However, there was enough of it so that we can find an on-sale bar. And that's just the incorrect way to look at it. And it's not what the district court did in the first case. In the first case, every single page of the briefing and her order are directed to what is disclosed in the demo. If we remove that demo, there is no prior art. This is not the same district court, is it? Yes. But the reason is it was never at issue in the prior case. It was not raised below the method claim elements or anything else. It was simply an experimental use case in the first part. The part that the court relies on now and that my opponents rely on is a little tiny paragraph. And this is the art that they are relying on here from the proposal, the Navigator proposal. It says, The ability to locate a part number by selecting product features in any order. Each time a feature is selected, the list of other features is narrowed down to reflect only those remaining selectable features. A demo of this approach is available at Danish International. That is the entire part of art that is being relied on, if we are to exclude the demo, for the first ten elements of the claims. I submit that none of those elements are met by this language. The only way that you could attempt to meet those first ten elements is by using what is in the demo. If the demo is not the subject of the offer for sale, then it is not prior art, and this is directly on point with the Plum Tree case. This is a method. There was no offer for sale of a product that had any of the limitations of the claims. Okay. Thank you, Mr. Becker. Thank you very much. Okay, so let's take another submission.